1  Andranik Tsarukyan, Bar No. 258241
   andy@remedylawgroup.com
2  Armen Zenjiryan, Bar No. 261073
   armen@remedylawgroup.com
3  REMEDY LAW GROUP LLP
   610 E. Providencia Ave., Unit B
4  Burbank, CA 91501
   Telephone: (818) 422-5941
5
   Attorneys for Plaintiff, CAROLYN D. CALLAHAN,
6  on behalf of herself and all others similarly situated

7  J. KEVIN LILLY, Bar No. 119981
   klilly@littler.com
8  SHANNON R. BOYCE, Bar No. 229041
   sboyce@littler.com
9  LITTLER MENDELSON, P.C.
   2049 Century Park East
10 5th Floor
   Los Angeles, CA  90067.3107
11 Telephone: 310.553.0308
   Facsimile:  310.553.5583
12
   ***COUNSEL CONTINUED ON NEXT PAGE***
13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16 | CAROLYN D. CALLAHAN, on | Case No.  2:18-cv-10726-VAP-SS |
   | behalf of herself and all others | |
17 | similarly situated, | **NOTICE OF JOINT MOTION AND** |
   | | **MOTION FOR APPROVAL OF** |
18 | Plaintiffs, | **PAGA SETTLEMENT** |
19 | v. | Date: March 30, 2020 |
   | | Time: 2:00 p.m. |
20 | BROOKDALE SENIOR LIVING | Courtroom: 8A |
21 | COMMUNITIES, INC., a Delaware | |
   | corporation; BROOKDALE | *[Filed concurrently with Declaration of* |
22 | EMPLOYEE SERVICES, LLC, a | *Andranik  Tsarukyan  and  [Proposed]* |
   | Delaware corporation; BROOKDALE | *Order]* |
23 | EMPLOYEE SERVICES- | |
   | CORPORATE, LLC, a Delaware | |
24 | corporation, and DOES 1 through 100, | |
   | inclusive, | |
25 | Defendants. | |
26
27
28

1   JEFFREY J. MANN, Bar No. 253440
    jmann@littler.com
2   LITTLER MENDELSON, P.C.
    Treat Towers
3   1255 Treat Boulevard, Suite 600
    Walnut Creek, California  94597
4   Telephone:  925.932.2468
    Facsimile:   925.946.9809
5
    Attorneys for Defendants
6   BROOKDALE SENIOR LIVING
    COMMUNITIES, INC.; BROOKDALE
7   EMPLOYEE SERVICES, LLC;
    BROOKDALE EMPLOYEE
8   SERVICES - CORPORATE, LLC;
    SUMMERVILLE AT ATHERTON
9   COURT, LLC; BROOKDALE
    VEHICLE HOLDING, LLC; BKD
10  PERSONAL ASSISTANCE SERVICES,
    LLC; EMERITUS CORPORATION;
11  BROOKDALE LIVING
    COMMUNITIES, INC.; BKD
12  TWENTY-ONE MANAGEMENT
    COMPANY, INC.; BROOKDALE
13  SENIOR LIVING INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 30, 2020 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 8A of the above-entitled Court, located at 350 West 1st Street, 8th Floor, Los Angeles, CA 90012, Plaintiff Carolyn D. Callahan ("Plaintiff"), individually and on behalf of all other aggrieved employees, and Defendants Brookdale Senior Living Communities, Inc., Brookdale Employee Services, LLC, Brookdale Employee Services – Corporate, LLC, Summerville at Atherton Court, LLC, Brookdale Vehicle Holding, LLC, BKD Personal Assistance Services, LLC, Emeritus Corporation, Brookdale Living Communities, Inc., BKD Twenty-One Management Company, Inc., and Brookdale Senior Living Inc. (collectively, "Defendants"), will and hereby do move this Court for entry of an Order as follows:

1. Approving the settlement of claims Plaintiff brings under the Private Attorneys General Act of 2004 ("PAGA");

2. Approving the gross settlement amount of $920,000.00 in exchange for dismissal of the PAGA claims with prejudice;

3. Approving an award of $306,666.67 (one-third of the gross settlement amount) in attorneys' fees to Plaintiff's counsel;

3. Approving an award of $8,512.36 for reimbursement of actual litigation costs;

5. Approving an award of $2,500.00 to Plaintiff for her services;

4. Appointing Simpluris, Inc. as the settlement administrator, and approving an award of up to $46,000.00 in anticipated costs to Simpluris, Inc. for its settlement administration services; and

5. Approving $556,320.97 as payment of civil penalties under PAGA, to be allocated as follows: $417,240.72 (75% of the PAGA penalties payment) to the California Labor and Workforce Development Agency ("LWDA")

1    for its share of PAGA civil penalties, and $139,080.24 (25% of the

2    PAGA penalties payment) to the aggrieved employees.

3    This Motion is based on this Notice, the attached Memorandum of Points and

4    Authorities, the declaration of Andranik Tsarukyan, the pleadings and other papers

5    filed in this action, and on any further oral or documentary evidence or argument

6    presented at the time of hearing.

7

8    Dated:    March 4, 2020              /s/ *Andranik Tsarukyan*
                                          Andranik Tsarukyan
9                                         Armen Zenjiryan
                                          REMEDY LAW GROUP LLP
10
                                          Attorneys for Plaintiff, CAROLYN D.
11                                        CALLAHAN, on behalf of herself and
                                          all others similarly situated
12

13

14   Dated:    March 4, 2020              /s/ *Shannon R. Boyce*
                                          SHANNON R. BOYCE
15                                        JEFFREY MANN
                                          Littler Mendelson, P.C.
16
                                          Attorneys for Defendants
17                                        BROOKDALE SENIOR LIVING
                                          COMMUNITIES, INC.; BROOKDALE
18                                        EMPLOYEE SERVICES, LLC;
                                          BROOKDALE EMPLOYEE
19                                        SERVICES - CORPORATE, LLC;
                                          SUMMERVILLE AT ATHERTON
20                                        COURT, LLC; BROOKDALE
                                          VEHICLE HOLDING, LLC; BKD
21                                        PERSONAL ASSISTANCE
                                          SERVICES, LLC; EMERITUS
22                                        CORPORATION; BROOKDALE
                                          LIVING COMMUNITIES, INC.; BKD
23                                        TWENTY-ONE MANAGEMENT
                                          COMPANY, INC.; BROOKDALE
24                                        SENIOR LIVING INC.

25

26

27

28

## I.    INTRODUCTION

Plaintiff Carolyn D. Callahan ("Plaintiff"), on behalf of real party in interest the California Labor and Workforce Development Agency ("LWDA"), and Defendants Brookdale Senior Living Communities, Inc., Brookdale Employee Services, LLC, Brookdale Employee Services – Corporate, LLC, Summerville at Atherton Court, LLC, Brookdale Vehicle Holding, LLC, BKD Personal Assistance Services, LLC, Emeritus Corporation, Brookdale Living Communities, Inc., BKD Twenty-One Management Company, Inc., and Brookdale Senior Living Inc. (collectively, "Defendants"), respectfully request the Court approve the parties' settlement of the LWDA's claims for civil penalties against Defendants.

The parties reached the proposed settlement after extensive investigation into Plaintiff's claims, including an analysis of Plaintiff's likelihood of success and the amount of penalties recoverable (and the likelihood that the recoverable penalties would be discounted), and following an arms-length negotiation overseen by an experienced class action mediator.

The proposed settlement totals $920,000.00, which the parties estimate will be allocated as follows:

- $417,240.72 to the LWDA;
- $139,080.24 to the Aggrieved Employees;
- $46,000.00 in administration costs;
- $306,666.67 in attorneys' fees;
- $8,512.36 in litigation costs and expenses; and
- $2,500.00 as a service award for the Plaintiff.

The settlement is the result of an arm's length negotiation among the parties, who were independently represented by experienced counsel and assisted by a neutral and seasoned mediator.  Plaintiff's counsel believes that, in light of the risks of continued litigation of the claims, the settlement is fair, reasonable, and adequate, will provide a significant benefit to the LWDA and to the aggrieved employees and deter

any future alleged violations of the Labor Code by Defendants.

## II.    SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY

On November 26, 2018, Plaintiff sent the LWDA notice of Defendants' alleged violations of the Labor Code.  The following day, on November 27, 2018, Plaintiff filed a class action complaint in Los Angeles County Superior Court alleging broad wage and hour causes of action based, inter alia, on the alleged failure to provide meal periods and rest breaks, unpaid overtime and minimum wages, unpaid business expenses, and related and derivative claims.  Defendants removed the complaint to the Central District of California on December 28, 2018.

The parties entered into a joint stipulation to: (1) stay Plaintiff's individual claims pending an individual arbitration of the same, (2) dismiss her class claims, and (3) permit the filing of an amended complaint stating a new cause of action under PAGA.  The Court granted the parties' order to this effect on February 5, 2019.

On February 6, 2019, after the notice period to the LWDA had been exhausted, Plaintiff filed her First Amended Complaint.  Plaintiff's First Amended Complaint formally added a cause of action for the recovery of civil penalties under PAGA, based on the same broad factual allegations stated in Plaintiff's original class action complaint.

On August 28, 2019, the parties participated in a mediation before noted class action mediator Steven G. Mehta.  In advance of mediation, Defendants provided Plaintiff with copies of all relevant policies and procedures, three years' worth of time and payroll data for a group of over 17,000 employees, and copies of related PAGA actions currently pending against Brookdale Senior Living Inc. or its subsidiaries in the State of California.[1]  Plaintiff thereafter analyzed hundreds of thousands of lines of

---

[1] Specifically, Defendants provided Plaintiff with copies of the following complaints:  (1) *Gonzales v. Emeritus Corporation, et al.; (2) Neverson v. Brookdale Senior Living Communities, Inc., et al.;* (3) *Rejuso v. Brookdale Senior Living Communities, Inc., et al.*; (4) *Rodriguez v. Brookdale Senior Living Communities, Inc., et al.*; and (5) *Sacro v. Brookdale Senior Living Communities, Inc., et al.* In entering into the settlement set forth herein, it is the intent of the Parties to encompass all such matters and extinguish all PAGA exposure.

NOTICE OF JOINT MOTION AND MOTION
FOR APPROVAL OF PAGA SETTLEMENT

5.

data and hundreds of pages of documentation in preparation for mediation. After a lengthy period of negotiation, the parties were able to reach an agreement to resolve Plaintiff's PAGA claims along with claims for related violations alleged by the plaintiffs in other pending PAGA actions against Defendants. The parties signed a memorandum of understanding reflecting the parties' agreement on August 28, 2019.

Plaintiff provided the LWDA with an amended notice on October 18, 2019 in conformity with California Labor Code § 2699.3. The amended notice provided additional detail regarding the legal and factual basis for Plaintiff's claims and the entities covered thereby.  The LWDA did not give Plaintiff notice of an intent to investigate or prosecute the Labor Code violations alleged in Plaintiff's amended LWDA notice during the time period provided by section 2699 *et seq.*

On February 13, 2020, after the Court granted Plaintiff leave to amend, Plaintiff filed a Second Amended Complaint on behalf of the LWDA alleging the following causes of action: (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay overtime wages, (4) failure to pay minimum wage, (5) failure to maintain required records, (6) failure to provide accurate wage statements, (7) failure to indemnify employees for necessary expenditures incurred in discharge of duties, (8) failure to pay all wages due upon termination, (9) violation of Business and Professions Code § 17200, et seq., and (10) enforcement of PAGA.

## III.    <u>LEGAL ARGUMENT</u>

### A.    *Standard for Approval of PAGA Settlement*

The settlement of a PAGA claim requires court approval.  Labor Code § 2699(l). In reviewing a proposed PAGA settlement, courts are encouraged to be mindful that "[s]ettlement is a compromise, which balances the possible recovery against the risks inherent in litigating further." *In re TD Ameritrade Account Holder Litig.*, Case No. C 07-2852 SBA, 2011 WL 4079226, *9 (N.D. Cal. Sept. 13, 2011). Indeed, "the very essence of a settlement is … 'a yielding of absolutes and an abandoning of highest hopes,'" as "it is the very uncertainty of outcome in litigation

and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 624-25 (9th Cir., 1982) (internal citations omitted). As such, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," or "judged against a hypothetical or speculative measure of what might have been achieved." *Id*.

Although the operative PAGA statute does not set forth the criteria by which a PAGA settlement is to be judged, courts often analyze the factors used to review of a class action settlement. In doing so, however, courts should be mindful that "a PAGA claim asserted on a non-class representative basis . . . is not considered a class action but a law enforcement action, and therefore does not have to meet the requirements of [a class action]." *Casida v. Sears Holdings Corp.*, 2012 WL 253217 at *3 (E.D. Cal. Jan. 26, 2012); *Thomas v. Aetna Health of Cal., Inc.*, 2011 WL 2173715, at * 11 (E.D. Cal June 2, 2011); *Arias v. Superior Court*, 46 Cal. 4th 969, 980-88 (affirming lower court's holding that "plaintiff need not satisfy class action requirements" to assert a PAGA claim); *Pedroza v. PetSmart, Inc.*, 2013 WL 1490667, at *15 (C.D. Cal. Jan. 28, 2013); *Mendez v. Tween Brands, Inc.*, 2010 WL 2650571 at *4 (E.D. Cal. Jul. 1, 2010). A court's review of a PAGA settlement necessarily implicates the following unique features that render the approval process distinct from approval of a class action settlement under Rule 23.

First, in evaluating the adequacy of the settlement amount, the Court's focus is not concerned with the amount(s) that "aggrieved employees" are to receive, but rather, must focus on the total settlement amount in achieving PAGA's law enforcement objective. Indeed, "[t]he remedy sought in a PAGA suit consists of civil penalties, not individual or class damages," and a "[PAGA] action is … designed to protect the public and penalize the employer for past illegal conduct," not to compensate aggrieved employees. *Mendez*, *supra*, 2010 WL 2650571 at *4; *see also Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777 at *4 (N.D. Cal. Apr. 2, 2010) ("Unlike class actions, these civil penalties are not meant to compensate

unnamed employees because the action is fundamentally a law enforcement action."). As the court in *Ochoa-Hernandez* further explained, "[u]nlike a class action seeking damages or injunctive relief for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *Id*. For these reasons, the California Legislature determined that the State of California should receive the bulk of the proceeds – 75% – of any PAGA settlement or judgment. Lab. Code § 2699(i); *see also ZB, N.A. v. Superior Court,* 8 Cal. 5th 175, 198 (2019).

Second, consistent with the fact that unnamed employees have no property interest in a PAGA claim, "[u]nnamed employees need not be given notice of the PAGA claim, nor do they have the ability to opt-out of the representative PAGA claim." *Ochoa-Hernandez*, 2010 WL 1340777 at *5. This renders the approval process of a PAGA settlement distinct from a class action settlement, as there is no need for the Court to employ the two-step approval process required under Rule 23.

Finally, unlike class action settlements under Rule 23, the scope of release permitted in a PAGA settlement is limited. While "judgment in [a PAGA] action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding . . . the non-party employees, because they were not given notice of the action or afforded any opportunity to be heard, would not be bound by the judgment as to remedies other than civil penalties." *Arias, supra,* 46 Cal.4th at 986-87 (2009); *see also ZB, N.A.*, *supra*, 8 Cal. 5th at 196 ("Nonparty employees are bound by the judgment in an action under the PAGA, but only with respect to recovery of civil penalties"). Thus, the scope of a release in a PAGA settlement does not include the release of the aggrieved employees' statutory or common law claims for damages and/or restitution.

### B.    *The Proposed Settlement is Fair, Adequate and Reasonable*

The court's role in evaluating a proposed settlement is limited to ensuring that

the agreement taken as a whole is fair and is not the product of fraud or collusion between the negotiating parties. *See, e.g., Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998). Courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists,* No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008). Although this case is not a class action, the same presumptions and policies apply to this case as well.

As discussed below, this settlement is presumed to be fair because it was reached after arms-length negotiations with an experienced and respected mediator, without any evidence of collusion or fraud. The terms of the settlement are also objectively fair to the LWDA given the risks inherent in litigation, and the defenses to liability and representative recovery presented by Defendants in this particular case.

### i.    *The Settlement is the Result of Arms-Length Negotiations*

The parties engaged in settlement negotiations after significant statistical analysis of data, informal discovery, calculation of liability by Plaintiff's counsel, and the assistance of an experienced wage-and-hour mediator. (Declaration of Andranik Tsarukyan Decl. ("Tsarukyan Decl."), ¶ 3). Counsel for the parties aggressively pursued their respective positions before eventually reaching an agreement. (*Id.*) Each side provided the other with several settlement proposals before the agreement was reached. (*Id.*) The negotiations were rigorous and conducted at arm's-length. (*Id.*) The Settlement cannot be described as fraudulent or collusive. (*Id.*) Rather, the Settlement is the product of informed and rigorous negotiations by experienced counsel. (*Id.*)

Because the proposed settlement was the result of arms-length negotiations, and there is no evidence of fraud or collusion, the proposed settlement is presumed to be fair. *Wren,* 2011 WL 1230826, at *6.

### ii.    *Plaintiff and Her Counsel Support the Settlement After Significant Investigation of the Factual and Legal Issues*

Where counsel are qualified to represent the proposed class in a settlement based on their prior class and other representative action experience and familiarity with the strengths and weaknesses of the action, the support of Plaintiff's counsel is an important factor that, in turn, supports finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Plaintiff's counsel has experience prosecuting and defending class and representative wage-and-hour litigation. (Tsarukyan Decl., ¶¶ 7-12.)  Prior to reaching an agreement to settle the PAGA claims, the parties engaged in substantial informal discovery. (Tsarukyan Decl., ¶ 4.)  Defendants provided the following information to Plaintiff's counsel prior to mediation:  (1) Plaintiff's wage statements, personnel file, and payroll records; (2) Defendants' handbooks in effect during the relevant limitations periods; (3) forms used by Defendants and its employees relevant to Plaintiff's claims; (4) three years' worth of timekeeping data for over 17,000 of Defendants' employees; (5) three years' worth of payroll data for the same group of employees; (6) additional statistics for the group of aggrieved employees, including the number of terminated employees. (*Id*.)

Using this information, Plaintiff was able to determine or estimate: (i) the average hourly rate of pay for the aggrieved employees; (ii) the total number of former and current employees who worked during the relevant period; (iii) the total number of shifts worked by all aggrieved employees during the relevant period; (iv) the number of workweeks during the relevant period; (v) the number of pay periods during the relevant period; (vi) the timing and length of meal breaks taken by the aggrieved employees; (vii) the number of rest breaks and meal periods to which employees were entitled during each shift worked; and (viii) the amount of meal

period and rest break premiums paid by Defendants during the relevant period. (Tsarukyan Decl., ¶ 5.)   Based on this represented data, Plaintiff performed an analysis of potential PAGA penalties that could be recovered, and the likelihood of recovering the same based on Defendants' defenses to liability and the ability of the Court to award reduced penalties. (*Id*.) Plaintiff also has reviewed and evaluated the complaints and discovery served by the parties in the following related cases: (1) *Neverson v. Brookdale*; (2) *Sacro v. Brookdale;* and (3) *Rodriguez v. Brookdale.*[2] (*Id*.)

After evaluating the factual allegations and legal issues that would arise prior to and during trial, including a review of the data and information discussed above, and considering the uncertainties and expenses of protracted litigation, the settlement amount reflects a fair compromise that confers substantial benefit upon the State of California and the aggrieved employees.  Therefore, Plaintiff and her counsel have determined that the settlement is in the best interests of all parties, including the State of California and the aggrieved employees. (Tsarukyan Decl., ¶ 6.)   Plaintiff's counsel's determination was made after taking into account all factors that would affect Plaintiff's ability to recover civil penalties on behalf of the LWDA.  Plaintiff agreed to settle the LWDA's claims for civil penalties only after performing such an analysis. (*Id*.)

### iii.   *The Terms of the Settlement Are Fair and Reasonable*

In evaluating the fairness of a proposed settlement, "the test is not the maximum amount Plaintiff might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances."  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 250 (2001); *see also In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723 (2006) ("[courts] should give due regard . . . to what is otherwise a private consensual agreement between the parties" and limit "its

---

[2] Although no discovery has been served in either matter, Plaintiff also reviewed the complaints filed in the related matters of *Gonzales v. Emeritus, et al.* and *Rejuso v. Brookdale Senior Living Communities, Inc.*

inquiry to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching"). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice, supra,* 688 F.2d at 623 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *see also Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving 30% of damages); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (approving 33% of damages); *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Penaloza v. PPG Industries Inc*., Case No. BC471369, 2013 WL 2917624 at *2 (Super. Ct. L.A. County, May 20, 2013) (approving PAGA penalties averaging **$7.49 per aggrieved employee** ($5,000 / 667 aggrieved employees)); *Cabrera v. Advantage Sale & Marketing, LLC*, Case No. BC485259, 2013 WL 1182822 (Super. Ct. L.A. County, March 12, 2013) (approving PAGA penalties averaging **$3.33 per aggrieved employee** ($10,000 / 3,000 aggrieved employees). In turn, courts have approved PAGA settlements of **$0**. *See, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 589 (2010) ("find[ing] no abuse of discretion in the trial court's approval of the settlement agreement containing" $0 for the PAGA claim).

Such discounts are particularly appropriate in PAGA actions, in which Courts exercise significant discretion in the amount of penalties to award. *See Carrington v. Starbucks Corp.,* 30 Cal. App. 5th 504, 529 (2018) (awarding 0.2% of maximum PAGA penalties); *see also Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien*, 2011 WL 7563047, at *4 (C.D. Cal. 2011). During the

penalty phase in *Carrington*, the plaintiff requested PAGA penalties of approximately $70 million, but was awarded only $150,000—**or 0.21% of the maximum**—and the court found this warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. This was affirmed on appeal. *Id.* at 529.

Likewise, in *Cotter*, the Court found that a $1 million PAGA settlement was fair and reasonable in light of the unsettled nature of the law, resulting in a 97.5% reduction from the maximum. And in *Covidien*, the Court reduced the potential penalties by over 82%. *See also*, e.g., *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (30% reduction where the employer produced evidence that it took its obligations seriously); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code § 226 as redundant with recovery on a class basis); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000.00, after rejecting numerous other PAGA claims).

Here, the proposed settlement confers substantial benefits on the real party in interest the State of California, as well as the aggrieved employees. In particular, Defendants are expected to pay approximately $417,240.72 to the LWDA, an amount that will be used "for enforcement of labor laws … and for education of employers and employees about their rights and responsibilities under [the California Labor] code." Lab. Code § 2699(i). This amount is significantly more than the amount allocated to the LWDA in other judicially-approved settlements of PAGA claims in hybrid actions. *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 at *3 ($1.95 million settlement allocating $10,000 to PAGA penalties); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO

(E.D. Cal. Oct. 31, 2012), 2012 WL 5364575 at *7 ($3.9 million settlement allocating $10,000 to PAGA penalties); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645 at *1 ($6.9 million settlement allocating $10,000 to PAGA penalties); *Guerrero v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) ($1.1 million settlement allocating $3,000 to PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane Johnson) ($1.4 million settlement allocating $5,000 to PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) ($3 million settlement allocating $13,333 to PAGA penalties); *Chavez v. Vallarta Food Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F. Highberger) ($1.5 million settlement allocating $10,000 to PAGA penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) ($1.5 million settlement allocating $1,000 to PAGA penalties).

Here, the approximately 17,894 employees whose data Plaintiff reviewed prior to mediation worked approximately 478,147 pay periods. Thus, at the default penalty rate of $100 per employee per pay period for an initial violation[3] pursuant to Labor Code section 2699(f), Plaintiff could have obtained a maximum of $95 million in PAGA penalties assuming a 100% violation rate. However, the data provided by Defendants showed that during the relevant time period, Defendants paid $1.8 million in meal and rest break premiums to its California employees, and that Defendants'

---

[3] Defendants would argue that the lower rate applies until an employer is found by the Labor Commissioner or a court to have committed an actual violation. *See Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1135 (2012); *see also Amaral v. Cintas*, 163 Cal. App. 4th 1157, 1209 (2008) ("Until the employer has been notified that it is violating a Labor Code provision (whether or not the commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties."); *Amalgamated Transit v. Laidlaw Transit Services, Inc.*, 2009 U.S. Dist. LEXIS 69842, *26 (S.D. Cal. Aug. 10, 2009).

employees took compliant meal periods 90 percent of the time when taking into account meal breaks that started mere seconds late.

Moreover, Defendants contend that all of their relevant policies were lawful, such that Defendants would argue that trial would be unmanageable due to the individualized inquiry necessary to determine if and why its written policies were not followed. *See, e.g., Salazar v. McDonald's Corp.*, 2017 WL 88999 (N.D. Cal. Jan. 5, 2017) (striking plaintiff's PAGA claim as unmanageable); *Brown v. American Airlines*, CV 10-8431-AG (PJWx) (C.D. Cal. Oct. 5, 2015) (granting motion to strike PAGA claim for unpaid overtime because claim necessarily required too many individualized assessments); *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015) (plaintiff's claims would require the court to engage in a "multitude of individualized inquires making the PAGA action unmanageable and inappropriate."); *Zhang v. Amgen*, 2015 WL 5752562, at *1 (Cal. Sup. Aug. 13, 2015) (dismissing a plaintiff's PAGA representative action on the basis that "the variance in what the [alleged "aggrieved employees"] do is sufficiently varied that using [plaintiff], and what he does, is not a valid measure of what the others do"); *Amey v. Cinemark USA, Inc.*, 2015 WL 2251504, at *16 (N.D. Cal. May 13, 2015) ("[W]hen the evidence shows, as it does here, that numerous individualized determinations would be necessary to determine whether any class member has been injured by Cinemark's conduct, then allowing a representative action to proceed is inappropriate."); *Bowers v. First Student, Inc.*, 2015 WL 1862914, at *4 (C.D. Cal. Apr. 23, 2015) ("Even if Rule 23 did not apply to PAGA representative claims, such claims can be stricken if they are found to be 'unmanageable.'"); *Litty v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 160448, at *6-7 (C.D. Cal. Nov. 10, 2014) (striking PAGA claim where "[t]he circumstances of this case make the PAGA claim unmanageable because a multitude of individualized assessments would be necessary"); *Ortiz v. CVS Caremark Corp.*, 2014 WL 1117614, at *4 (N.D. Cal. Mar. 19, 2014) (dismissing PAGA claim as unmanageable where "a multitude of

individualized assessments would be necessary").

Finally, Defendants have argued that Plaintiff cannot "stack" multiple penalties in a given pay period. *See, e.g., Sanchez v. McDonald's Rests. of Cal.,* Los Angeles Superior Court Case No. BC499888 (rejecting plaintiffs' attempt to "stack" penalties under Section 1174.5 or Labor Code Section 510); *Smith v. Lux Retail N. Am., Inc*., 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal., June 13, 2013) (questioning whether a court "would really pile one penalty on another for a single substantive wrong").

Considering the above, and the Court's ability to further reduce the recovery of penalties where the "facts and circumstances … otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory," (Labor Code section 2699(a)(2)), the settlement sum of $920,000.00 in this case is fair and reasonable.

### C.    *The Requested Attorneys' Fees and Costs are Reasonable*

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952.  However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions. *See Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund).

The challenges that Plaintiff's counsel had to confront and the risks they had to fully absorb on behalf of the LWDA and aggrieved employees are precisely the reasons for multipliers in contingency fee cases. *See, e.g., Noyes v. Kelly Servs., Inc.*,

2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed... because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in cases where, like in the case at bar, the result is uncertain. This does not result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

For these reasons, Plaintiff's counsel respectfully submits that a one-third recovery for fees is appropriate. Here, Plaintiff's counsel's current lodestar is $196,425, which is based on approximately 291 hours at the attorneys' customary hourly rates. Plaintiff's counsel also anticipates spending an additional 10 hours on this matter, preparing for and appearing at the hearing for approval, working with the Settlement Administrator as needed, and resolving any post-approval issues that may arise, representing an additional $6,750 in time not yet billed[4], for a total firm lodestar of approximately $203,175. (Tsarukyan Decl., ¶¶ 13-17.)

---

[4] Plaintiff's counsel anticipates incurring a significant amount of additional attorneys' fees defending against any challenge by other plaintiff's counsel regarding approval of this settlement.

NOTICE OF JOINT MOTION AND MOTION
FOR APPROVAL OF PAGA SETTLEMENT

17.

The lodestar amount may be increased by applying a multiplier. *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977). In California, "[m]ultipliers can range from two to four or even higher" and are routinely applied in the range requested by class counsel. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001); *see also Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (upholding 2.5 multiplier); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984) (affirming a fee award that included a 12.0 multiplier). Some of the factors a trial court considers when determining whether to apply a multiplier are: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citations omitted). The ultimate goal is "to entice competent counsel to undertake difficult public interest cases*." San Bernardino Valley Audubon Soc. v. County of San Bernardino*, 155 Cal. App. 3d 738, 755 (1985). Fee awards that are too small "chill the private enforcement essential to the vindication of many rights…." *Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 53 (2000).

Plaintiff's counsel's efficiency and skill in bringing the case to an early resolution should not be used to justify refusal to award the requested fees. As the court explained in *Lealao*:

> [T]he promptness of settlement cannot be used to justify the refusal to apply a multiplier to reflect the size of the class recovery without exacerbating the disincentive to settle promptly inherent in the lodestar methodology. Considering that our Supreme Court has placed an extraordinarily high value on settlement … it would seem counsel should be rewarded, not punished, for helping to achieve that goal….

*Lealao*, 82 Cal. App. 4th at 52 (citations omitted).

Application of a modest 1.5 multiplier is appropriate based on the contingent risk incurred by Plaintiff's counsel, the difficulty of the questions involved, the

substantial benefit conferred on the LWDA and the aggrieved employees as a result of the settlement, and the skill displayed by Plaintiff's counsel. Therefore, Plaintiff's counsel's request for $306,666.67 in attorneys' fees is reasonable under the lodestar method with application of a modest 1.5 multiplier. Plaintiff's counsel's efforts resulted in an excellent settlement, and therefore the fee and costs award should be preliminarily approved as fair and reasonable.

Plaintiff's counsel also requests reimbursement for their actual litigation costs. The settlement agreement provides for reimbursement of costs not to exceed $17,500.00. To date, Remedy Law Group LLP has incurred actual costs in the amount of $8,512.36. (Tsarukyan Decl., ¶ 17.) These costs were reasonably incurred in prosecuting this case on behalf of the LWDA and the aggrieved employees and should be approved by the Court. Accordingly, Plaintiff's counsel respectfully requests the Court approve costs in the amount of $8,512.36.

Plaintiff's counsel's efforts resulted in an excellent settlement, and therefore the fee and costs award should be approved as fair and reasonable. Defendants do not oppose the requested fees and costs to the Plaintiff's Counsel as a reasonable award.

### D. *The Requested Service Award is Reasonable*

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The enhancement payments of $2,500.00 for Plaintiff is intended to compensate Plaintiff for the critical role she played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the LWDA and the aggrieved employees. Plaintiff contributed her time to the prosecution of this matter, including assistance prior to the mediation with information and substantial time conferring with counsel over the course of this litigation and before it was filed. Plaintiff also attended the mediation in person. The enhancement also recognizes the considerable risks Plaintiff undertook on behalf of the LWDA and the aggrieved employees including facing intrusive discovery and potential disclosure to future employers that

Plaintiff sued a former employer, making the future uncertain. As such, the payment to Plaintiff is appropriate and justified as part of the overall settlement. Defendants do not oppose the requested payment to the Plaintiff as a reasonable service award.

Moreover, the service award is significantly less than service awards approved in class actions. *See, e.g., Guilbaud v. Sprint/United Management Co., Inc.,* No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service payments for each class representative in FLSA and California state law representative wage and hour action); *Van Liew v. North Star Emergency Services, Inc., et al.*, No. RG17876878 (Alameda Cty. Super. Ct, Dec. 11, 2018) (approving $15,000 and $10,000 service awards, respectively, to class representatives in California Labor Code wage and hour class action).

### E.      Settlement Administration

The parties have agreed to use Simpluris, Inc. to administer the Settlement. Estimated costs will not exceed $46,000.00. (Tsarukyan Decl., ¶ 19.) Simpluris, Inc. will distribute the notice of settlement, calculate individual settlement payment and prepare and issue all disbursements to aggrieved employees, the LWDA, Plaintiff, and Plaintiff's counsel. (*Id.*) Simpluris, Inc. also will establish a settlement website that will allow Class Members to view the Class Notice (in generic form), and other pertinent documents, and will provide a toll-free number to field inquiries. (*Id.*)

### IV.      CONCLUSION

For all the foregoing reasons, this Court should grant this Motion for Approval of PAGA Settlement, adopt the [Proposed] Order Granting Motion for Approval of PAGA Settlement submitted herewith, and enter Judgment accordingly.

Dated:    March 4, 2020                          /s/ *Andranik Tsarukyan*
                                                 Andranik Tsarukyan
                                                 Armen Zenjiryan
                                                 REMEDY LAW GROUP LLP

                                                 Attorneys for Plaintiff, CAROLYN D.
                                                 CALLAHAN, on behalf of herself and
                                                 all others similarly situated


Dated:    March 4, 2020                          /s/ *Shannon R. Boyce*
                                                 SHANNON R. BOYCE
                                                 JEFFREY MANN
                                                 Littler Mendelson, P.C.

                                                 Attorneys for Defendants
                                                 BROOKDALE SENIOR LIVING
                                                 COMMUNITIES, INC.; BROOKDALE
                                                 EMPLOYEE SERVICES, LLC;
                                                 BROOKDALE EMPLOYEE
                                                 SERVICES - CORPORATE, LLC;
                                                 SUMMERVILLE AT ATHERTON
                                                 COURT, LLC; BROOKDALE
                                                 VEHICLE HOLDING, LLC; BKD
                                                 PERSONAL ASSISTANCE
                                                 SERVICES, LLC; EMERITUS
                                                 CORPORATION; BROOKDALE
                                                 LIVING COMMUNITIES, INC.; BKD
                                                 TWENTY-ONE MANAGEMENT
                                                 COMPANY, INC.; BROOKDALE
                                                 SENIOR LIVING INC.

## **ATTESTATION**

Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), the filer of this document attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filings' content and have authorized the filing.

DATED:  March 4, 2020                            /s/ *Andranik Tsarukyan*
                                                 ANDRANIK TSARUKYAN