JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Carolyn D. Callahan, on behalf of herself and similarly situated others,

    Plaintiffs,

v.

Brookdale Senior Living Communities, Inc., Brookdale Employee Services, LLC, and Brookdale Employee Services-Corporate, LLC,

    Defendants

2:18-cv-10726-VAP-SSx

**Order GRANTING Joint Motion for Approval of PAGA Settlement IN PART (Dkt. 29)**

On March 4, 2020, Carolyn D. Callahan ("Plaintiff") and Brookdale Senior Living Communities, Inc., Brookdale Employee Services, LLC, and Brookdale Employee Services-Corporate, LLC ("Defendants") filed a Joint Motion for Approval of PAGA Settlement ("Motion"). (Dkt. 29). After considering all papers filed in support of the Motion, the Court GRANTS the Motion IN PART.

## I. BACKGROUND

Plaintiff is a former employee of Defendants; during her employment with Defendants, she worked as a concierge/receptionist. (Dkt. 28 at ¶ 3). She alleges that all Defendants were her joint employers. (Dkt. 28 at ¶ 17). On November 26, 2018, Plaintiff sent LWDA notice that Defendants had allegedly violated the Labor Code. She filed a class action complaint, alleging wage and hour causes of action, in Los Angeles Superior Court the following day. (Dkt. 1-2). On December 28, 2018, Defendants removed the case to this Court. (Dkt. 1).

On February 5, 2019, the Court approved the parties' joint stipulation to stay Plaintiff's individual claims pending an individual arbitration, dismiss her class claims, and permit the filing of an amended complaint alleging a new claim under PAGA. (Dkt. 19). Plaintiff filed a First Amended Complaint on February 6, 2019, adding the PAGA claims. (Dkt. 20). On August 28, 2019, the parties participated in mediation and, "[a]fter a lengthy period of negotiation, the parties were able to reach an agreement to resolve Plaintiff's PAGA claims along with claims for related violations alleged by the plaintiffs in other pending PAGA actions against Defendants. The parties signed a memorandum of understanding reflecting the parties' agreement on August 28, 2019." (Dkt. 29 at 6).

On February 13, 2020, Plaintiff filed a second amended complaint against Defendants and a number of other individuals and entities, claiming several violations of the Private Attorneys General Act ("PAGA"), as codified in section 2699 of the California Labor Code: (1) failure to provide meal

periods; (2) failure to provide rest periods; (3) failure to pay overtime wages; (4) failure to pay minimum wage; (5) failure to maintain required records; (6) failure to provide accurate wage statements; (7) failure to indemnify employees for necessary expenditures incurred in discharge of duties; and (8) failure to pay all wages due upon termination.  Plaintiff also brings claims for (9) violations of California Business and Professions Code § 17200, *et seq.* (unfair competition); and (10) enforcement of PAGA.  (Dkt. 28, "SAC").

The parties now request jointly that the Court approve the proposed settlement under section 2699(l) of the California Labor Code.  (Dkt. 29).[1]

## II.   LEGAL STANDARD

The California legislature enacted PAGA "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts."  *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) ("If the California Labor and Workforce Development Agency ('LWDA') declines to investigate an alleged labor law violation or issue a citation, an aggrieved employee may commence a PAGA action against an employer 'personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.'").  An "aggrieved employee" is defined as "any person who was

---

[1] Mishelle Neverson, Nina Rejuso, and Geneflor Sacro filed motions to intervene in the settlement, (Dkts. 32, 35, 37, 39), which the Court denied (Dkt. 48).

employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

"An employee plaintiff suing [under PAGA] does so as the proxy or agent of the state's labor law enforcement agencies." *Arias*, 46 Cal. 4th at 986. An action for civil penalties under PAGA "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties" *Id.* (quoting *People v. Pacific Land Research Co.*, 20 Cal. 3d 10, 17 (1977)). "Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." Id. "Of the civil penalties recovered, 75 percent goes to the California Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.'" *Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP, 2010 WL 1340777, at *1 (N.D. Cal. Apr. 2, 2010) (quoting Cal. Labor Code § 2699(i)).

Further, section 2699(l)(2) states, "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part. The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." Cal. Lab. Code § 2699(l)(2). "A court has discretion to approve the settlement of PAGA claims if the settlement would be 'fair.'" *Junhee Lee v. Esra Jung*, No. 15-cv-01529-HRL, 2016 U.S. Dist. LEXIS 136162, at *2 (N.D. Cal. Sep. 29, 2016). "The court may consider factors such as the merits of the action, the maximum recovery the plaintiff

could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis v. Weatherford US LP*, No. 1:16-CV-00252-JLT, 2017 WL 131994, at *2 (E.D. Cal. Jan. 12, 2017).

The LWDA has suggested some guidelines for approving PAGA claims, which have been cited with approval by a number of courts:

> when a PAGA claim is settled, the relief provided for under the PAGA [should] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [should] evaluate whether the settlement meets the standards of being fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA.

*Syed v. M-I, L.L.C.*, No. 112CV01718DADMJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (internal quotations and citations omitted); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). In doing so, the Court may "consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis*, 2017 WL 131994 at *2.

As other courts in this district have found, however, "the Act is surprisingly short on specifics," and neither the California legislature, the LWDA, nor California courts have identified "the appropriate standard for approval of such a settlement." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). As a result, "[f]ederal district courts, sitting in diversity, have often been left to their own

devices in this area of great importance to the citizens of California." *Id.* at 1075-76.

### III.  DISCUSSION

Plaintiff brought this PAGA action in a representative capacity.  The parties propose an aggregate settlement amount of $920,000, divided as follows:

- $417,240.72 to the LWDA;
- $139,080.24 to the Aggrieved Employees;
- $46,000.00 in administration costs;
- $306,666.67 in attorneys' fees;
- $8,512.36 in litigation costs and expenses; and
- $2,500.00 as a service award for the named Plaintiff

### A.  PAGA Settlement

As discussed above, the Court adopts the "fair and reasonable" standard other courts have applied to review PAGA settlements.  "A court has discretion to approve the settlement of PAGA claims if the settlement would be 'fair.'"  *See Junhee Lee v. Esra Jung*, 2016 U.S. Dist. LEXIS 136162 at *2 (citing *Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 581 (2010)).  The court may consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and "how and why [the] parties arrived at the settlement amount.'"  *Hollis v. Weatherford US LP*, No. 1:16-CV-00252-JLT, 2017 WL 131994, at *2 (E.D. Cal. Jan. 12, 2017) (citing *Junhee Lee v. Esra Jung*, 2016 U.S. Dist. LEXIS 136162 at *4-5).

In the traditional PAGA settlement context, courts must review "the merits of the action [and] the maximum recovery the plaintiff could obtain" to ensure the LWDA and other potentially aggrieved employees, who are bound by the settlement, are not being short-changed. The Court finds the proposed settlement amount to be reasonable. The proposed settlement amount, $920,000, represents 0.97% of the maximum possible settlement value. (*See* Dkt. 29 at 14 ("Plaintiff could have obtained a maximum of $95 million in PAGA penalties assuming a 100% violation rate.")). As the parties point out, however, there is no basis for assuming the violation rate truly was actually that high. Indeed, "the data provided by Defendants showed that during the relevant time period, . . . Defendants' employees took compliant meal periods 90 percent of the time." (*Id.*). Other courts considering similar factual circumstances have approved similar settlements. *See, e.g.*, *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (affirming trial court's approval of settlement awarding 0.2% of maximum PAGA penalties where the trial court had found "the violations were minimal" and determined "that imposition of the maximum statutory penalty would result in an award that is unjust, arbitrary, oppressive, or confiscatory").

The Court also finds the settlement is fair, reasonable, and adequate when considering "how and why [the] parties arrived at the settlement amount." *Hollis*, 2017 WL 131994 at *2. Here, the parties exchanged significant amounts of information in advance of the mediation. Indeed, "Defendants provided Plaintiff with copies of all relevant policies and procedures, three years' worth of time and payroll data for a group of over

1  17,000 employees, and copies of related PAGA actions currently pending
2  against Brookdale Senior Living Inc. or its subsidiaries in the State of
3  California." (Dkt. 29 at 5). Plaintiff reviewed data on approximately 17,894
4  employees, working approximately 478,147 pay periods, before entering
5  mediation. (Dkt. 29 at 14). Furthermore, there is no evidence of collusion;
6  the settlement was reached as a result of arm's length negotiation before an
7  experienced mediator, with each side represented by counsel experienced
8  in PAGA and wage and hour matters. (Dkt. 29 at 9-10). *See Wren v. RGIS*
9  *Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D.
10 Cal. Apr. 1, 2011), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562
11 (N.D. Cal. May 13, 2011) ("An initial presumption of fairness is usually
12 involved if the settlement is recommended by class counsel after arm's-
13 length bargaining." (internal quotations and citation omitted)).

15 In sum, the Court finds the settlement is "consistent with the
16 underlying purpose of the statute to [1] benefit the public," *Syed*, 2017 WL
17 714367 at *13; (2) "protect the public"; and (3) not "benefit private parties,"
18 *Arias*, 46 Cal. 4th at 986. Further, the Court finds the PAGA settlement
19 amount is "fundamentally fair, reasonable, and adequate." *Syed*, 2017 WL
20 714367 at *13.

**B. Attorneys' Fees**

23 When evaluating attorneys' fees, the Ninth Circuit has held that "the
24 district court has discretion in common fund cases to choose either the
25 percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*,
26 290 F.3d 1043, 1047 (9th Cir. 2002) (citing I*n re Wash. Pub. Power Supply*

*Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994)). When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).

Here, Plaintiffs' Counsel seeks 33% of the total settlement fund, which is significantly higher than the Ninth Circuit's 25% "benchmark award" for attorneys' fees. *Hanlon*, 150 F.3d at 1029. Thus, before approving the proposed fee, the Court must evaluate it under the factors set forth in *Vizcaino*.[2]

1. Results Achieved

Plaintiffs' Counsel have provided no evidence that it obtained an especially exemplary result. Indeed, the settlement amount obtained by Plaintiffs' Counsel represents less than 1% of the maximum possible value, which is less than the settlement percentages in the majority of the cases counsel cites to support its request for higher fees. (*See* Dkt. 29 at 16-17).

---

[2] The Court examines these factors only briefly, as the Parties did not discuss the factors at all.

Accordingly, this factor weighs against approving the proposed attorneys' fees award.

### 2. Risks of Litigation

Although Plaintiffs' Counsel did assume some degree of risk by representing Plaintiffs, Plaintiffs' Counsel have not shown that this case carries the type of extreme risk that would merit a departure from the 25% benchmark. Compare *Monterrubio*, 291 F.R.D. at 456–57 (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense"), and *Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), with *Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent). Accordingly, this factor weighs against approving the proposed attorneys' fees award.

### 3. Skill and Quality of the Work

While the Court does not doubt Plaintiffs' Counsel are experienced and skilled litigators, they have not shown the kind of exceptional skill or quality

of work to warrant a departure from the 25% benchmark. Thus, this factor weighs against approving the proposed attorneys' fees award.

### 4. Contingent Nature of the Fee

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. Thus, whether Plaintiffs' Counsel have taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark. *Monterrubio*, 291 F.R.D. at 457. Here, Plaintiffs' Counsel took this case on a contingency fee basis, and this factor weighs slightly in favor of an upward deviation from the benchmark.

### 5. Awards Made in Similar Cases

As noted above, 25% is the Ninth Circuit's "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Plaintiffs' Counsel request the Court enhance the award, citing to cases in which courts have awarded attorneys' fees at or above one third of the total settlement fund. (*See* Dkt. 29 at 16). Plaintiffs' Counsel, however, have failed to show how any of those cases are similar to this one. In fact, in cases where class members recovered a similarly low percentage award, the Court has found the result achieved does not justify a departure from the benchmark. *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP-SPx, 2017 WL 10434013, at *6 (C.D. Cal. Oct. 12, 2017). Therefore, this factor weighs against a departure from the 25% benchmark.

### 6. Burdens Carried by Plaintiffs' Counsel

Plaintiffs' Counsel have provided information as to the most significant costs, incurred for mediation and the filing and service of the complaint, which, combined, account for $6,302.36 of the total $8,512.36 requested. (Dkt. 29-1 ¶ 17). The Court finds these expenses reasonable, but not overly burdensome. This factor also weighs against the proposed fee enhancement.

### 7. Lodestar Cross-Check

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award. *Vizcaino*, 290 F.3d at 1050.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)). Here, Plaintiffs' Counsel report that its

lodestar is $196,425, based on a total of approximately 291 hours at an hourly rate of $675. (Dkt. 29-1 ¶ 17). Aside from its own personal assurances that the hourly rates are reasonable, Counsel has not provided supporting evidence as to the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill." *Id.* Further, Counsel have provided no detail regarding the number of hours it spent on this case, instead presenting only the total number of hours expended. (*Id.*) Plaintiffs' Counsel also seek compensation for a further 10 hours of anticipated work preparing for the settlement conference and other administrative matters related to settlement, representing an additional $6,750. (*Id.*). Plaintiffs' Counsel, however, cite no authority to support an award of prospective fees in a PAGA settlement.

In sum, five of the *Vizcaino* factors weigh against departing from the 25% attorneys' fee award benchmark and only one weighs in favor. The Court, therefore, finds that the facts of this case do not present the type of "unusual circumstances" required to justify a departure from that benchmark. *Graulty*, 866 F.2d at 272. In addition, the Court declines to rely on Plaintiffs' Counsel's lodestar calculation figures for the reasons stated above.

Accordingly, the Court DENIES Plaintiffs' Counsel's application for attorneys' fees equal to 33% of the settlement fund ($306,666.67). Instead, the Court APPROVES an attorneys' fees award of 25% of the settlement fund ($230,000.00), with the remainder of the settlement allotted to attorneys' fees returning to the LWDA and Aggrieved Employees.

### C. Service Award

Plaintiffs' Counsel seek a service award of $2,500 for the named plaintiff. (Dkt. 29 at 19). The Court finds this award reasonable in light of the time she devoted to this matter, as well as the risks inherent in serving as a named plaintiff in an employment matter.

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion IN PART. The Court APPROVES the proposed aggregate settlement amount of $920,000, as well as the $2,500 service award to the named plaintiff. The Court DENIES the Motion as to the proposed award of attorneys' fees. The Court APPROVES the settlement as follows:

- $474,740.72 to the LWDA;
- $158,246.91 to the Aggrieved Employees;
- $46,000.00 in administration costs;
- $230,000.00 in attorneys' fees;
- $8,512.36 in litigation costs and expenses; and
- $2,500.00 as a service award for the Plaintiff

**IT IS SO ORDERED.**

Dated: 7/7/20

*Virginia A. Phillips*
Virginia A. Phillips
United States District Judge